## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DARRYL D. RUTH,**

**Petitioner,**

**v.**                                        **Case No. 4:18cv92-RH/CAS**

**MARK S. INCH, Secretary,
Florida Department of
Corrections,[1]**

**Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On February 15, 2018, Petitioner, Darryl Ruth, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  He also filed a memorandum in support of the petition.  ECF No. 2.  Respondent filed an answer and record exhibits on September 6, 2018.  ECF Nos. 14, 14-1 through 14-13.  Petitioner filed a reply on December 11, 2018.  ECF No. 19.

_____

[1] The Clerk of Court shall substitute Mark. S. Inch as Secretary of the Florida Department of Corrections.  Mark S. Inch succeeded Julie L. Jones as Secretary of the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Information filed October 11, 2011, in the Circuit Court in Leon County, Florida, with Count I, the September 19, 2011, burglary of a dwelling of Perrissa Dixon and/or Frederick Dixon with person assaulted; Count II, Robbery of Frederick Dixon while in actual possession of a firearm; and Count III, kidnapping of Frederick Dixon with a firearm.  Ex. A at 6.[2]  Trial was held on Counts I and II on May 17, 2012, and Petitioner was found guilty as charged on each count.  Ex. A at 38-40; Ex. B.

---

[2] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through KK submitted in conjunction with Respondent's answer.  *See* ECF Nos. 14-1 through 14-13.

Petitioner was sentenced to twenty years in prison for Count I and a concurrent term of twenty years for Count II, with a ten-year minimum mandatory term as to Count II due to the possession of the firearm, with credit for 84 days of time served.  Ex. A at 46-55; Ex. C at 68-69.  Petitioner appealed to the state First District Court of Appeal, Ex. A at 56-57, but while the appeal was pending, filed a motion to relinquish jurisdiction to allow the circuit court to consider a post-conviction motion filed on April 15, 2013, pursuant to Florida Rule of Criminal Procedure 3.850 alleging Brady and Giglio violations.[3]  Ex. D; Ex. N at 1-200; Ex. O at 201-05.  On April 25, 2013, the appellate court granted the motion and relinquished jurisdiction for ninety days to permit consideration and disposition of Petitioner's Rule 3.850 motion.  Ex. E.  The relinquishment was subsequently extended for an additional ninety days.  Exs. F, G.

During the relinquishment, the State requested the Rule 3.850 motion be set for an evidentiary hearing, which was held on August 21, 2013.  Exs. O at 226-400, Ex. P at 401-68.  The motion was denied on the record and by written order.  Exs. P at 459-67; Ex. O at 224.  Notice of Appeal was

---

[3] Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

filed as to that ruling and a separate district court of appeal case number was assigned.  Ex. O at 225.

On October 22, 2013, Petitioner sought an order from the district court of appeal to extend the relinquishment of his direct appeal further to allow the circuit court to hear a second, successive Rule 3.850 motion alleging newly discovered evidence of the victim's recantation.  Ex. H.  On November 5, 2013, the appellate court denied the motion and ordered that the briefs be filed on or before November 25, 2013.  Ex. K.  On December 26, 2013, Petitioner, through counsel, filed a notice of voluntary dismissal of the direct appeal of his conviction at the direction of Petitioner.  Ex. L. The direct appeal was dismissed on December 30, 2013.  Ex. M.

On May 21, 2014, in Petitioner's appeal from the denial of his motion for post-conviction relief, counsel moved to withdraw, Ex. S., and the court granted the motion, noting that Petitioner would proceed pro se.  Ex. T. Petitioner was directed to file his pro se brief on or before June 20, 2014. *Id.*  Not having received an initial brief, the appellate court dismissed the post-conviction appeal on July 22, 2014.  Ex. U.

Appearing through different counsel, Petitioner filed a second Rule 3.850 motion in circuit court on July 30, 2014, alleging newly discovered evidence of the victim's recantation and ineffective assistance of trial

counsel.[4]  Ex. V at 1-54.  An amended Rule 3.850 motion was filed on

August 11, 2014.  Ex. V at 57-112.  An evidentiary hearing was held on

February 4, 2015, and May 8, 2015.  Ex. W; Ex. X at 278-457.  On August

4, 2015, the postconviction court denied the motion.  Ex. X at 458-64.

Petitioner appealed to the First District Court of appeal and, with

counsel, filed his initial brief.[5]  Ex. AA.  The State filed an answer brief, Ex.

BB, and Petitioner filed a reply brief.  Ex. CC.  Oral argument was held on

June 27, 2016, Ex. DD, and on June 30, 2016, the court per curiam

affirmed without opinion.  Ex. EE.  Motion for certification to the Florida

Supreme Court was denied but Petitioner's motion for a written opinion was

granted and a written opinion was issued on December 21, 2016.  Ex. GG.

The mandate was issued on February 8, 2017.  *See* Ruth v. State, 207 So.

3d 970 (Fla. 1st DCA 2016).  The district court of appeal held that the

recantation by the prosecution's main witness who identified Petitioner as

one of the six perpetrators did not warrant a new trial because the court

---

[4] The amended Rule 3.850 motion alleged: (1) newly discovered evidence of victim's recantation requires a new trial; and (2) ineffective assistance of trial counsel that was not raised by postconviction counsel in the first Rule 3.850 motion, to wit, failure to sufficiently prepare for trial and present evidence of Petitioner's location during the crime; failure to move for a new trial.  Ex. V at 77, 80.

[5] The issues raised on appeal were: (1) trial court error in denying new trial where sole witness has now recanted and where physical evidence corroborates the recantation that Petitioner did not commit the crime; and (2) trial court error in denying claim of ineffective assistance of counsel for failing to present evidence at trial regarding location of Petitioner during the time of the crime.  Ex. AA.

was not satisfied the recantation was true.  *Id.* at 972-73.  The appellate

court affirmed denial of the ineffective assistance of counsel claims as

barred under Rule 3.850(h)(2), concluding that the ruling of the trial court

that no good cause existed for failing to raise the claims in the first post-

conviction motion was not an abuse of discretion.  *Id.* at 974.  The appellate

court noted that the post-conviction court also ruled, alternatively, that the

claims lacked merit, which the appellate court stated it would affirm if the

claim was not found procedurally barred.  *Id.*

Petitioner sought discretionary review in the Florida Supreme Court,

which was denied on May 19, 2017.  Ex. KK.  *See* Ruth v. State, No. SC17-

87, 2017 WL 2210410 (Fla. May 19, 2017) (not reported in Southern

Reporter).

On February 15, 2017, Petitioner filed this petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following two

grounds for relief:

> (1) Petitioner is entitled to immediate release or an
> evidentiary hearing because he has shown by newly discovered
> evidence of recantation that he is actually innocent of the
> offenses; and
>
> (2) Petitioner was denied his right to effective assistance
> of counsel when counsel failed to sufficiently prepare for trial
> and present evidence that would have proven Petitioner's
> innocence.

ECF No. 1.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' "  Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

To obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); see also McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." <u>Consalvo v. Sec'y, Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* at 845.

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To demonstrate

deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Both deficiency and prejudice must be shown to

demonstrate a violation of the Sixth Amendment.  Thus, the court need not

address both prongs if the petitioner fails to prove one of the prongs.

Strickland, 466 U.S. at 697.

### Ground 1: Newly Discovered Evidence

Petitioner contends that he is entitled to immediate release or an

evidentiary hearing because he has shown by newly discovered evidence

of recantation that he is actually innocent of the crimes for which he was

convicted.  ECF No. 1 at 5-9.  He argues that this is not a freestanding

claim of actual innocence, but contends that he is innocent and has

suffered a constitutional violation as alleged in Ground 2 that his trial

counsel rendered ineffective assistance.[6]  ECF No. 2 at 16.

This claim of newly discovered evidence, along with a claim of

ineffective assistance of trial counsel, was raised in a second Rule 3.850

motion and an evidentiary hearing was held.  Exs. W; X at 278-457.  At the

hearing, the State's only eyewitness testified that he was wrong when he

testified at trial that Petitioner was one of six men who entered his home

with guns and robbed and beat him.  The state post-conviction court denied

relief, concluding:

---

[6] See Ground 2, infra, for discussion of the claim of ineffective assistance of
counsel.

Unfortunately for the defendant, however, on his motion, I simply do not believe [the victim] Mr. Dixon's testimony. There are several reasons for this.

First, his explanation as to why he "lied" against the defendant just doesn't make sense. After initially saying in his 911 call that he didn't know any of his assailants, he told the first officer that he spoke to that he was 100% sure that one of the assailants was the defendant. He maintained a degree of certainty as to identification when he was interviewed a day or two later, and again later by the investigator at the State Attorney's Office. At trial, his testimony was very convincing as to the identification, explaining to the jury that he had known the defendant for several years, that the defendant had a distinctive voice and manner of walking and a recognizable short, small framed body. He told the jury how he wasn't sure at the beginning, that the person looked familiar or seemed familiar to him and it was only gradually, as the person walked and talked, that he realized that he was the defendant. It should be noted that, according to Mr. Dixon, all of the assailants wore masks or covered their faces in some fashion.

Dixon explained at the hearing that he identified the defendant because of the desire for him and his family to have "closure" on this event. This makes absolutely no sense when the statement of identification was made a very short time after the commission of the offense, at the very beginning of an investigation. . . .

His suggestion that he made this positive identification with such certainty because he was on probation and felt pressure to help the police and the prosecution for fear that he might be violated on his probation also makes no sense. That might explain why he would testify at trial consistent with his prior statements, but it doesn't explain the prior statements which were made well before the defendant was charged and the prosecutor assigned to the case turned out to be the same prosecutor on Mr. Dixon's case. . . .

Finally, despite the protestations in his affidavits and in his testimony at the hearing that he understood that he could be prosecuted for perjury, he equivocated throughout the hearing

> as to whether he ever actually lied.  His definition of lying
> appears to be the same as mistaken. . . .[7]
>
> It could be that Mr. Dixon is a cold, heartless and cruel
> person who identified the defendant at his trial and helped put
> him away and that he now feels bad about it and wants to try to
> undo the harm he has caused the defendant.  It is more likely,
> however, that he did tell the truth to the jury as best he knew it,
> that he was sure that the defendant was one of the persons
> who committed the crime against him, but now feels bad and
> wants to try to help an old family friend if he can, without a
> whole lot of risk of adverse consequences to himself.  Whatever
> the truth may be, I find Mr. Dixon's testimony to be unreliable
> and not credible and therefore cannot grant the relief requested
> based on "newly discovered evidence."

Ex. X at 459-61.  The post-conviction court's recitation of Dixon's testimony

at trial and at the evidentiary hearing is accurate.  The First District Court of

Appeal affirmed with an opinion, rejecting the challenge to the post-

conviction court's credibility findings.  The court stated: "On the contrary,

case law provides that a trial court must deny a request for a new trial

based on recantation of testimony by a State witness if the court 'is not

satisfied that such testimony is true.' "  Ruth v. State, 207 So. 3d 970, 972

(Fla. 1st DCA 2016) (quoting Armstrong v. State, 642 So. 2d 730, 735 (Fla.

---

[7] For example, he described the testimony he gave at trial as a "misconception."
Ex. W at 168.  His affidavit stated that Petitioner was "mistakenly identified" and Dixon
"unintentionally assumed" it was Petitioner.  Ex. Y, Def's Evidentiary Hearing Exhibit 1.
During cross-examination at the evidentiary hearing, he did testify that he lied to the
police and at trial, but also stated that he uses the word "lie" and "mistake"
interchangeably and believed he had been "mistaken" when he testified at trial.  Ex. W
at 204-09, 221-22, 248.

1995)).  The court found that the postconviction court could not substitute its judgment for that of the jury, which heard the witness's original testimony and that, after reviewing the post-conviction court's stated reasons, found that the court properly executed its duty to weigh the evidence and make a difficult credibility determination.  *Id.* at 973.

Respondent contends that Ground 1 is, in fact, a freestanding claim of actual innocence that is not cognizable in federal habeas proceedings, despite Petitioner's attempt to tie it to a constitutional claim asserted in Ground 2.  ECF No. 14 at 19-21.  Actual innocence is relevant in the federal context where it is asserted to overcome a procedural default or avoid the limitations period of § 2254(d)(1).  That is not the context in which Petitioner brings this claim of actual innocence.  Claims of actual innocence based on newly discovered evidence have not been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal trial.  Herrera v. Collins, 506 U.S. 390, 400 (1993).  The Eleventh Circuit has not recognized a freestanding innocence claim in a noncapital case.  *See* Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir.), *cert. denied*, 552 U.S. 979 (2007).  Federal habeas courts sit to ensure that prisoners are not imprisoned in violation of the Constitution, not to correct errors of fact.

Herrera, 506 U.S. at 400.  Even if a freestanding claim of actual innocence

were cognizable in federal habeas proceedings, the standard for

establishing a freestanding claim of actual innocence is "extraordinarily

high," and the showing for a successful claim would have to be "truly

persuasive."  *Id.* at 417.

Where the actual innocence claim is asserted in order to overcome a

procedural default, which is a lesser burden than when presented to

support a freestanding claim, a petitioner must present new credible

evidence.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  "To be credible, such

a claim requires petitioner to support his allegations of constitutional error

with new reliable evidence" that was not presented at trial.  *Id.* (emphasis

added).  In addition, Petitioner " 'must show that it is more likely than not

that no reasonable juror would have convicted him in the light of the new

evidence.' "  McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (quoting

Schlup, 513 U.S. at 327).  The state court made a determination that the

recantation testimony of Dixon was not credible or reliable.  It is not this

Court's role to make an independent determination of Petitioner's guilt or

innocence based on evidence that emerged after the trial and no basis has

been presented to disturb the state court's finding that Dixon's recantation

was not credible or reliable.  *See* Brownlee v. Haley, 306 F.3d 1043, 1064-

65 (11th Cir. 2002).  As noted earlier, "[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  <u>Consalvo</u>, 664 F.3d at 845.  Credibility of a witness is a question of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*  For these, and for the following reasons, Ground 1 should be denied.

First, there is no basis to conclude that the state court's adjudication of the newly discovered evidence claim is contrary to or an unreasonable application of clearly established federal law.  The state court followed state law in finding relief was not warranted because the recantation was not credible or reliable.  The Florida Supreme Court has held that recantation does not necessarily entitle a defendant to a new trial; recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.  <u>Consalvo v. State</u>, 937 So. 2d 555, 561 (Fla. 2006).  "When a claim of newly discovered evidence is based upon the recantation of testimony by a witness for the prosecution, the second prong of [<u>Jones v. State</u>, 709 So. 2d 512, 521 (Fla. 1998)] is met only where the defendant first establishes that the recanted testimony is truthful."  <u>State v. Murray</u>, No. SC17-707, 2018 WL 6695986, at *4 (Fla.

Dec. 20, 2018), *reh'g denied*, No. SC17-707, 2019 WL 351086 (Fla. Jan. 7, 2019) (quoting Spann v. State, 91 So. 3d 812, 822 (Fla. 2012).

This essentially mirrors the standard applied by the federal courts when considering whether a recantation should result in a new trial. "[R]ecantations are viewed with extreme suspicion by the courts." Milton v. Sec'y Dep't of Corr., 347 F. App'x 528, 532 (11th Cir. 2009) (unpublished) (quoting United States v. Santiago, 837 F.2d 1545, 1550 (11th Cir. 1988)). *See also* Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984).  To warrant relief from a judgment of conviction and a new trial, any new evidence, including recantation evidence, must be credible and reliable.  Generally speaking, a witness's recantation of trial testimony will justify a new trial only where the judge is satisfied that the recantation is true and that it will likely result a different verdict.  Dobbert, 468 U.S. at 1234 (citing Brown v. State, 381 So. 2d 690, 692-93 (Fla. 1980)).  The post-conviction court in this present case found that the recantation by Dixon was unreliable and not credible, thus denying post-conviction relief on the claim.  This adjudication has not been shown to be contrary to any federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the record.  Moreover, the claim is without merit as the recantation evidence did not establish that Petitioner was actually innocent

of the crimes for which he was convicted. The sworn testimony of Dixon presented at trial was found more credible by the state court than his recantation testimony, and the trial testimony supported the verdicts of guilt in this case.

Second, as discussed in Ground 2 *infra*, the independent constitutional violation asserted by Petitioner is without merit and cannot render cognizable the actual innocence claim. Accordingly, Ground 1 presents a freestanding actual innocence claim that is not cognizable in this federal habeas proceeding and, even if cognizable, is without merit and should be denied.

## Ground 2: Ineffective Assistance of Trial Counsel

In this ground, Petitioner contends he was denied his right to effective assistance of counsel when counsel failed to sufficiently prepare for trial and present evidence that would have proven Petitioner's innocence. ECF No. 1 at 10. He argues that trial counsel failed to investigate possible routes and drive times between Petitioner's home and the victim's home. He contends that counsel could have secured and presented evidence to show that cell phone records proved his phone was at his home in Midway, Florida, less than thirteen minutes from the time of the crime, and that the drive would have taken more than thirteen minutes to the victim's

CRITICAL

residence.  ECF No. 1 at 10-11.  This claim was raised in Petitioner's amended second Rule 3.850 motion, Ex. V at 81-86, and the claim was heard at the evidentiary hearing on February 4, 2015, and May 8, 2015, where trial counsel testified.  Ex. W; Ex. X.  On this issue of drive times, trial counsel testified only that, in hindsight, he could have driven the route from Petitioner's home to the victim's home "just to get the exact time myself, even though, I mean, I did it on Map-quest."  Ex. X at 356.

The post-conviction court found the claim was procedurally barred as being raised in a successive Rule 3.850 motion rather than in the first post-conviction motion filed by Petitioner in 2013 while his direct appeal was pending.  Ex. X at 462-63.  The court stated in pertinent part:

> The defendant contends that because of the "unique facts" of this case, the successive motion for post conviction relief based on ineffective assistance of counsel does not constitute an abuse of procedure, and that there was a good cause for these grounds not having been asserted in the defendant's prior motion.[8]  Additionally, the defendant argues that the procedural bar should not be applied because it resulted from post-conviction counsel's errors in the initial proceeding.
>
> The defendant and his counsel were warned before beginning proceedings on the first motion under Rule 3.850, that successive motions might very well be barred, but the defendant elected to go forward.  In this case, the claims of

---

[8] Petitioner's counsel argued that that when the first motion was filed during the pendency of the direct appeal, Petitioner and his post-conviction counsel at the time did not have the benefit of a trial transcript to discover the deficiency of trial counsel.  Ex. W at 156.

ineffective assistance of counsel, either were or could have been and should have been known to the defendant and the defendant's counsel at the time the first motion was filed and there is no good cause shown why it was not included at that time.  I thus find that the defendant is procedurally barred from raising grounds of ineffective assistance of counsel.

Even if it was not procedurally barred, I find that the defendant was not deprived of his Sixth Amendment right to effective assistance of counsel at trial.  One of the chief complaints the defendant mounted against his trial attorney is that he did not present evidence of the actual driving time between the crime scene and the residence of the defendant so as to corroborate his alibi that he was at home at the time of the offense. The defendant presented testimony [of a witness] at the hearing that it would take approximately 13 to 15 minutes to get from the defendant's residence in Gadsden County to the scene of the crime in Leon County.

My initial reaction to hearing that testimony was that it was a lot quicker time than I thought it would have taken given the location of the defendant's residence and the location of the crime scene.  I would imagine that most jurors, even a little bit familiar with the areas, would think that it would take at least 15 minutes or more to make that drive.  Trial counsel effectively set up the theory of alibi to strengthen the argument that Mr. Dixon must have been mistaken in his identification.  The defendant has not shown that his trial attorney provided ineffective assistance of counsel in this regard or if he did, that it would have made any difference in the outcome of the trial.

Ex. X at 462-63 (footnote added).

The First District Court of Appeal affirmed, holding that the post-

conviction court did not abuse its discretion in finding the claim of

ineffective assistance of counsel to be barred as successive and without

good cause under Rule 3.850.  Ruth v. State, 207 So. 3d 970, 974 (Fla. 1st

DCA 2016).  However, the appellate court noted the alternate ruling of the

post-conviction court finding counsel not ineffective.  The appellate court

stated that if the court had not found the claim procedurally barred

> we would affirm on this basis as well. . . .  At the post-conviction
> hearing, Appellant presented evidence that it would take at
> least thirteen minutes to drive from his home to the victim's
> home and that his cell phone was at his home less than thirteen
> minutes from the time of the crime.  This argument ignores the
> fact that Appellant did not show that he was actually with his
> phone at the time and does not sufficiently account for the fact
> that the exact time of the crime has not been established.
> Given this failing in the post-conviction evidence, Appellant
> could not establish a reasonable probability that the verdict
> would have been different had counsel presented the timing
> evidence.

*Id.* at 974.

Respondent contends that because the ruling of the state First

District Court of Appeal was "clearly in the alternative" and not "the only

basis of decision," the denial rests upon an independent and adequate

state procedural bar.  ECF No. 14 at 25 (citing Davis v. Singletary, 119

F.3d 1471, 1479 (11th Cir. 1997) (holding that "once the state courts have

ignored any procedural bar and rejected a claim on the merits—not in the

alternative but as the only basis of decision—that claim is not barred from

federal habeas review.").  Respondent also contends that, regardless of

any bar, the claim is without merit and does not entitle Petitioner to federal

habeas relief.  ECF No. 14 at 31-39.

Petitioner argues here that the procedural bar should not prevent this Court from ruling on the merits of his claim because the failure to raise the ineffective assistance claim in the first motion was the fault of his collateral counsel.  He cites Martinez v. Ryan, 566 U.S. 1 (2012), in which the Supreme Court recognized a "narrow" and "limited" equitable exception to the general procedural default rule.  *Id.* at 15.  The Supreme Court held that a prisoner may overcome a procedural default of a claim of ineffective assistance of trial counsel when (1) the state requires such claims be raised only in a collateral proceeding; (2) the state either appoints no counsel for the initial-review collateral proceeding, or appointed counsel is constitutionally ineffective; and (3) the underlying claim has some merit.  *Id.* at 14.

However, it is not necessary for the Court to reach the issue of procedural bar or whether Martinez excuses the bar because, regardless of any state procedural bar, the claim that trial counsel rendered ineffective assistance under the requirements of the two prongs of Strickland is without merit and should be denied.[9]  *See generally* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

---

[9] Petitioner was provided a full evidentiary hearing on this claim in the post-conviction court.

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  "We need not decide whether [the Petitioner] has shown cause under <u>Martinez</u> to lift the procedural bar here because, as explained below, his ineffectiveness claim lacks merit."  <u>Ruiz v. Superintendent Huntingdon SCI</u>, 672 F. App'x 207, 209 (3d Cir. 2016) (unpublished) (citing 28 U.S.C. § 2254(b)(2)).

As the post-conviction court found in its alternate ruling, and as the state appellate court noted, "Appellant could not establish a reasonable probability that the verdict would have been different had counsel presented the timing evidence."  <u>Ruth</u>, 207 So. 3d at 974.  At trial, the jury heard evidence that Frederick Dixon was at his mother's home on the date of the incident when six men came in through an unlocked sliding door late at night.  Ex. B at 58-62.  The six men were armed with guns and demanded to know where the money was.  When the victim said he had none, he was beaten, sustaining a broken nose, cut lip, head wound, facial fracture, and some cuts.  Ex. B at 68.   He was also restrained with duct tape.  Ex. B at 70.  He testified that he passed out after more beating and did not know how long he was unconscious.  Ex. B at 68.  After he woke, his three-year-old nephew found a knife and the victim cut himself loose.  Ex. B at 67.  The victim ran to a neighbor after the burglary, robbery, and

beating, and the neighbor called 911.  The victim told the 911 operator that the crime occurred "not longer than five minutes ago."  Ex. B at 109.  He reported to the 911 operator that he did not know who the six men were.  Ex. B at 108.  Officer Jerome Megna was dispatched at 12:25 a.m. pursuant to the 911 call.  Ex. B at 87.  Before the victim was taken to the hospital, he identified Petitioner as one of the perpetrators when he gave a statement to Officer Magna.  Ex. B at 92., 119.  He also identified Petitioner in a written statement he gave the next day.  Ex. B at 95-97.

The victim testified he had known Petitioner for many years and was familiar with his physical build and distinct speaking voice.  Ex. B at 59, 71.  The victim heard the man identified as Petitioner talk during the incident several times, including when he told the others not to kill the victim.  Ex. B at 62, 65.  All six perpetrators had some sort of facial covering, but the one identified as Petitioner had a covering only from below his nose to his chin.  Ex. B at 61.  The victim testified that Petitioner was one of the intruders and was the one who pointed a gun at the victim's three-year-old nephew in an attempt to force the victim to disclose the location of money.  Ex. B at 66-67, 72, 74.  He testified that he was 100% certain the person was Petitioner, even though he reported to the 911 operator that he did not know any of the perpetrators.  Ex. B at 88, 108.

The victim testified the crime occurred around five to ten minutes after his mother left to go to the store.  Ex. B at 56.  Officer Magna testified that the victim told him the incident happened around 11:30 p.m.  Ex. B at 123.  At trial, the victim's mother testified that she just recently realized she left for the store about 10:25 or 10:30 p.m.  She said she realized it the day before trial when she saw on her telephone records that on the night of the burglary she called about her credit card account to check the balance right before she left for the store.  Ex. B at 45.  She also testified that she "certainly could be wrong" about the time she left the house because she did not make any notes about it.  Ex. B at 44.

Even if trial counsel had presented the drive time evidence, Petitioner failed to demonstrate a reasonable probability that, but for the alleged deficiency of counsel, the outcome of the trial would have been different.  As the state appellate court noted, Petitioner did not establish that he was with his cell phone at the time it remained in his home in Midway during the time of the offense and the exact time of the crime was not proven with any certainty.  Further, the jury heard evidence that Petitioner, who owned a cell phone business, had three or four cell phones.  Ex. B at 29-30.  The prosecutor argued to the jury that the evidence showed there was more than an hour and 20 minutes when Petitioner's cell phone was either

unattended or unanswered.  Ex. B at 208.  Thus, the question of Petitioner's guilt did not turn on the fact that he made a call on his cell phone less than 13 minutes before the victim's mother said she left for Walmart.  She admitted she did not make any notes about the time she left, but was basing her testimony on a call she made to her credit card company the day before trial.  At the time of the crime, the victim did not contact 911 until 12:25 a.m. and reported that the incident had just recently occurred.  Evidence of a drive time of 13 minutes, even if presented, would not have required the jury to disregard all the other evidence concerning the cell phone records and the details in the victim's report to law enforcement immediately after the event.  Moreover, the jury heard that the distance between Petitioner's home and the crime scene was 9.8 miles.

The Supreme Court explained in Strickland that a finding of ineffective assistance requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Strickland, 466 U.S. at 687.  The defendant must also show that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.  *Id.*  Petitioner did not make these showings in the state court.

As noted earlier, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.  Petitioner failed to make this showing as well and is not entitled the extraordinary remedy provided by § 2254.  Ground 2 should be denied.

## Conclusion

Based on the foregoing, Petitioner Darryl Ruth is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.  The Clerk of Court shall substitute Mark S. Inch for Julie Jones

as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2019.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**